UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILES EUGENE JOHNSON,

        Plaintiff,                     CIVIL ACTION NO. 12-13191

        v.                            DISTRICT JUDGE PAUL D. BORMAN

                                     MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 12)

Plaintiff Miles Eugene Johnson challenges the Commissioner of Social Security's ("Defendant") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 12). Plaintiff also responded to Defendant's motion (Dkt. No. 13). Judge Paul D. Borman referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") did not err in finding Plaintiff can perform his past relevant work as a utility inspector – as Plaintiff actually performed it – and reasonably discounted Plaintiff's allegation of disabling back pain, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

## II.     DISCUSSION

### A.     *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *See Bass v.*

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.   REPORT

#### A.   *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on September 17, 2008, alleging he became disabled on May 1, 2003 (Tr. 20). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a video hearing before ALJ Rebecca LaRiccia, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 20-27). Plaintiff requested an Appeals Council review (Tr. 14). On May 23, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

#### B.   *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his disability onset date in 2003 (Tr. 22).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: coronary artery disease, status post coronary artery bypass graft, and hypertension (Tr. 22).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 22).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of light work (Tr. 24).

At step four, the ALJ found that Plaintiff could perform his past relevant work as a utility inspector (Tr. 26-27). Accordingly, the ALJ found Plaintiff was not disabled.

  C. *Administrative Record*

    1. **Plaintiff's Hearing Testimony and Statements**

Plaintiff worked for Ford Motor Company ("Ford") for 30 years. He last worked for Ford as a utility inspector, where he checked seats, bolts, tracks and cushions (Tr. 36). According to Plaintiff, this position did not require heavy lifting (more than 20 pounds) and was manageable because it "was kind of light" (Tr. 36, 38). But, he chose to accept a buy-out and retire early because his back problems would likely have prevented him from doing jobs – other than utility inspector (Tr. 37-38).

Plaintiff testified that he has an irregular heartbeat, an enlarged heart, back pain and diabetes (Tr. 36, 42, 44). In October of 2008, Plaintiff had triple bypass surgery (Tr. 35). Plaintiff said he can stand for 50 minutes (but for only 15 minutes with his head down); he can only sit bent over for 15 minutes (Tr. 39, 44). Plaintiff testified that he has to lie down during the day with his legs elevated to ease the pain (Tr. 45).

Despite his limitations, Plaintiff testified that he can ride a stationary bike for 30 minutes, walk for 25 minutes, do household chores, go to the store and drive (Tr. 40-41). Plaintiff cannot lift anything heavy (Tr. 42).

### 2. Vocational Expert

The vocational expert ("VE") testified that Plaintiff's past relevant work as a utility inspector was generally performed at the light level in the national economy, although Plaintiff performed the job at the medium level (Tr. 46).

### D. *Plaintiff's Claims of Error*

#### 1. Conflict Between the Dictionary of Occupational Titles and the VE's Testimony

Plaintiff argues that the ALJ erred in finding he can perform his past relevant work as a utility inspector, because the Dictionary of Occupational Titles ("DOT") describes this occupation – as generally performed – at the medium exertional level, but the ALJ found he could only perform light work.[1] In this regard, the ALJ did err, but the error was harmless.

At step four of the disability analysis, the ALJ concluded that Plaintiff was not disabled because he could perform his past relevant work as a utility inspector:

> [Plaintiff's] work as a utility inspector was done within the last fifteen years, lasted long enough for him to learn to properly perform the job, and was

---

[1] Plaintiff also alludes to the fact that the Grids direct a finding that Plaintiff is disabled. However, the Grids are not applicable until step five of the disability analysis, which the ALJ did not have to reach in this case. *See Sandborn v. Comm'r of Soc. Sec.*, 2009 WL 126340 at *5 (W.D. Mich. Jan. 16, 2009) ("[t]he ALJ uses the grids to assist in determining whether a claimant can perform other work at step five of the sequential evaluation. Here, the ALJ resolved the disability claim at step four, when he found that plaintiff could perform her past relevant work") (internal citations omitted); *see also James-Parker v. Comm'r of Soc. Sec.*, 2013 WL 1150593 at *8 (W.D. Mich. March 19, 2013) ("[i]f we find that you have the [RFC] to do your past relevant work, we will determine that you can still do your past work and are not disabled. *We will not consider* your vocational factors of age, education, and work experience or *whether your past relevant work exists in significant numbers in the national economy*") (emphasis in original).

> performed at the substantial gainful activity earnings level. [Plaintiff] retired after thirty years on the job with Ford Motor Company.  It is a job [Plaintiff] stated he performed at a medium exertional level but that the vocational expert stated is generally performed at light.
>
> In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Plaintiff] was able to perform it as generally performed.  The vocational expert testified that [Plaintiff's] past relevant work as a utility inspector is generally performed at the light exertional level. [Plaintiff's] residual functional capacity was determined to be "light" in the residual functional capacity discussion above.

(Tr. 26-27).

DOT code 763.684-010 for Assembly Inspector (furniture)[2] indicates it is generally performed at the medium exertional level.[3]  But, the VE testified that the inspector job is generally performed at the light exertional level.

> As an initial matter, the ALJ is not bound by the information provided in the DOT:
>
> The implication of [Plaintiff's] argument is that the Commissioner should be bound by the Dictionary's characterization of [the inspector] occupation[].  But this court has previously ruled to the contrary.  In *Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995), the court held that the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications. [Plaintiff] has therefore failed to show that the ALJ erred in evaluating the testimony of the vocational expert.

*Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).  However, the ALJ was confronted with a conflict between the VE's testimony and the information provided in the DOT, which she failed to properly address.

---

[2] Although the ALJ referenced DOT code 763.688-010 in her decision (Tr. 26), this Magistrate Judge finds she misinterpreted the VE's handwriting; the VE referenced DOT code 763.684-010 when summarizing Plaintiff's past relevant work (Tr. 163).  The code referenced by the ALJ does not exist.

[3] *See* http://www.occupationalinfo.org/76/763684010.html (last visited May 15, 2013).

The Social Security Rulings provide requirements that ALJs must follow when faced with such a conflict:

> this ruling emphasizes that before relying on VE . . . evidence to support a disability determination or decision, our adjudicators must:
>
> • [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and
>
> • [e]xplain in the determination or decision how any conflict that has been identified was resolved.
>
> \* \* \*
>
> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.
>
> \* \* \*
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> • [a]sk the VE . . . if the evidence he . . . has provided conflicts with information provided in the DOT; and
> • [i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual

-8-

>is or is not disabled. The adjudicator will explain in the determination or decision how . . . she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p. The ALJ erred. She should have asked the VE, on the record, whether the evidence he provided conflicted with the information provided in the DOT. If it did, the ALJ should then have: (1) elicited a reasonable explanation for the conflict from the VE; and (2) explained in her decision how she resolved any conflict.

However, this error was harmless. Any conflict pertains to whether Plaintiff can perform the inspector job as it is generally performed in the national economy (i.e., the VE testified that the inspector job is generally performed at the light exertional level, but the information provided in the DOT indicates that the inspector job is generally performed at the medium exertional level). Plaintiff's argument ignores an important aspect of the regulations: at step four of the disability analysis, the VE may offer evidence concerning whether Plaintiff can perform his past relevant work *either* as it is generally performed in the national economy *or* as *Plaintiff actually performed it*. *See* 20 C.F.R. §404.1560(b)(2).

Here, Plaintiff testified that despite his back pain, he could have continued to perform the utility inspector job as he actually performed it. Specifically, he testified: (1) "if I would have got[sic] transferred to another job or something, I don't think I would have been able to, you know – especially, [the inspector job] was kind of light, so it kept me working"; (2) "because I was an inspector, which required light duty work, you know, I was able to work" (Tr. 38-39). Significantly, Plaintiff did not stop working because of his impairments; he decided to take "the easy way" and retire after 30 years (Tr. 37-38).

Substantial evidence – specifically, Plaintiff's own testimony – supports the ALJ's decision that Plaintiff can perform his past relevant work as a utility inspector. The ALJ's decision should not be disturbed on appeal.

### 2. Plaintiff's Credibility

Plaintiff next argues that the ALJ did not provide valid reasons for discounting Plaintiff's testimony. Regarding Plaintiff's back pain, the ALJ wrote:

> [Plaintiff] originally alleged lower and upper back pain beginning in 2003. However, [Plaintiff] was never treated for any cervical or lumbar back pain prior to his date last insured. He noted a history of back problems pre alleged onset, but [Plaintiff] worked with alleged back pain at the medium to light level for many years. This does not support the inability to work as of his alleged onset date.
>
> [Plaintiff] testified that he had a limited sitting and standing tolerance but again, he worked for many years doing work that he described as medium and a job that was done mostly while standing according to [Plaintiff's] testimony.

(Tr. 24-25). Plaintiff says the ALJ's decision does not comport with SSR 96-7p, which provides that "[t]he reasons for the credibility finding must be grounded in the evidence and . . . contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]"

As the ALJ explained, Plaintiff has had back pain since at least the 1990s, during which he continued to work for Ford (Tr. 38).[4] Accordingly, the ALJ reasonably discredited Plaintiff's allegation of disabling back pain. *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) ("it is significant that [plaintiff] continued to work . . . for two years after his accident. He argues that his condition worsened over time, but there is no objective evidence that his condition declined significantly during that two-year interval").

## IV. CONCLUSION

Because the ALJ did not err in finding Plaintiff can perform his past relevant work as a utility inspector – as Plaintiff actually performed it – and reasonably discounted Plaintiff's allegation of disabling back pain, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion

---

[4] Plaintiff testified that he missed two years of work because of "disk problems in [his] back." But, he was medically cleared and returned to work as a utility inspector (Tr. 37-38).

-10-

for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: May 21, 2013

### *Certificate of Service*

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, May 21, 2013, by electronic and/or ordinary mail.

*s/Kim Grimes Acting in the Absence of Eddrey Butts*

-12-

*Case Manager for Magistrate Judge Mark A. Randon*